Thank you, Your Honor. And may it please the Court, my name is Mark Caldwell. I'm representing Ms. Luna this morning in this Social Security Disability Benefits case. I will keep track of my own time, but for the Court's information, I would like to reserve two minutes of my time for rebuttal. Whatever you have on the clock when you sit down, yes. Thank you. The panel is familiar with the facts, so I won't review that very much. To be very succinct about it, Ms. Luna's knees are shot and she's very depressed. Her psychiatrist has presented limitations that the Commissioner's vocational expert has testified would preclude any sustained work. However, without reaching the issue of the legitimacy of the claimant's reported symptoms or the treating psychiatrist's assessment, the district court remanded for further administrative proceedings based solely on the fact that Ms. Luna had filed a subsequent application and been granted benefits on that application. We don't have in the record, at least I haven't found it, when this second filing took place, the date of the second filing. Do we have that information? The date of the filing we don't have. I don't think that was the distinguishing factor. But it's quite obvious, knowing the snail's pace of those cases, it had to be some time, or we wouldn't have had the determination made the day after the first one was made. So your client was running two separate cases at the same time. Two separate cases, correct. Do we have any evidence in the record as to what was covered in the second petition? No. And I think you've hit the nail on the head. So the Commissioner would like to know, well, how did this happen? Is there something wrong with our system? Is somebody playing a game with us? The only way they'll know is to get information from both of them and look at it. Why doesn't that make good sense, at least not an abuse of discretion, for the ALJ to remand it back and take a look at it? Let me tell you why it's an abuse of discretion. Because it's an error of law, and an error of law, by definition, is an abuse of discretion. The statute is very specific. 42 U.S.C. 405g says that the Commissioner can move for, or for that matter, a claim to move for remand for further administrative proceedings upon a showing that there is evidence that is new and material. And as you just said, Judge Wallace, we have no idea, none. Not only do we not have a showing, the Commissioner hasn't even made the argument. The Commissioner has simply said there is a possibility there might be something. Well, if that's the case, then in every single case where a claimant has filed a subsequent application and been granted benefits, then the Commissioner is entitled to that second bite at the apple. But this isn't this is sort of a unique situation. A little bit. I don't suppose I've seen all of the cases, but in the time I've been on the Court, I've never seen a situation where they were run at the same time. And I suspect the Commissioner hasn't seen many either and would like to look at it. Is there something, if in fact it turns out that there are two filings made going on at the same time for the same problem with the same dates, is there anything in the rules that say that's not what you ought to do? Was there a violation of any rule? Sure. It's a violation of the statute because there has to be a showing, a showing, not a possibility, not a speculation. There has to be a showing of evidence that is new and material. But you've changed the facts a little bit on me here, Judge, because we don't have an overlap of the evidence. We have one period of time that is the subject of this appeal, and we have a separate period of time where Ms. Luner was adjudicated to be disabled. How do we know that? We haven't seen the second case file. Well, we know the dates. We know the date of the ALJ decision in this case. Same person, same physical condition. Condition can change over time, but it's not like you're dealing with somebody that's entirely different. I mean, I think it's a fair inference that there's going to be a pretty substantial overlap of the evidence. It's the same person. Brutton v. Massonari. In Brutton v. Massonari, the claimant did exactly, exactly what the Commissioner wants to do here with no difference whatsoever.  Those are different time periods, different medical evidence. I'm puzzled by your reference to second bite of the apple. How exactly does the Commissioner improve his position by sending it back? Well, there's a chilling sentence in the Commissioner's brief. I think it's buried in a footnote. I refer to it in my brief, in my reply brief, where the Commissioner says, well, yeah, there is something we can change here. We can revise the favorable decision that Ms. Luner got. We can take away what we've already given her. That's in their brief. But that's not in this case. Yes, it is. That's what the Commissioner says. The Commissioner is saying that's one of the possible outcomes. Where was the favorable decision? I'm sorry, sir. Where was the favorable decision? I'm sorry. I'm just not understanding your question. Did she get a favorable decision in the case that's before us today? No. Then it's not in this case, is it? What you're proposing to keep them from doing isn't something you can keep them from doing in this case because the favorable decision was in a different case. Right. Nothing that we do with this case affects that other case. It could. How? It could. As the Commissioner said in the Commissioner's brief, when this goes back, we can take a look at the whole thing. But that's not because of this case. This case doesn't deal with the favorable decision. If the Commissioner can change the favorable decision, that's something he can do whether or not we send this case back or not, because this case isn't the one that contains the favorable decision. I guess my answer to that is I just don't know. But the point that I really don't know. It strikes me, if anything, with regard to the case in front of us, it can only get better for your client. So I'm really puzzled as to why the court of appeals and the district court is supposed to take its time dealing with a case where, in fact, if it gets sent back, the result could be more favorable for your client in this case. I don't think it is. Why is it our job to do it in the first instance? Why don't we let the agency figure out maybe they made a mistake and should have worked with the agency to get a better result, because that's what the Court of Appeals  It doesn't put forward benefits to your client. I have a couple answers to that. I have three answers to that. One, it isn't clear at all that my client can only get better. The Commissioner himself has suggested that they could revise the subsequent favorable decisions. That's the other case. Unless you've got a better answer than you gave me before, you haven't suggested anything that could get better or get worse for your client in this case. Let me keep going. If the first answer doesn't work, maybe the second will do better. Okay. Well, I've got two more. One, I already mentioned Brutton. I mean, Brutton is on all fours with this case. Respect for precedent, frankly, is my argument there. And my third answer is Varneen 2, Lester, Smolin, Reddick, Orn, Beneke, all the cases where this Court has said it is a waste of resources and an undue hardship on claimants to make them run through the bureaucratic gauntlet one more time. So those are my three answers. I'm coming up on my two minutes, and I certainly don't want to cut anybody off, but if there's nothing further, I'll reserve. Okay. Thank you. We'll hear from the Commissioner. Good morning. Shea Bond on behalf of the Commissioner of Social Security. It is our position that the district court did not abuse its discretion in fashioning the remedy that it did. This case is appropriate for remand for further proceedings for the very fact that we need to we agree that the Commissioner or the claimant is disabled. The question is how, when is that onset date? And that's something that's appropriate for the Commission. I'm very interested in what you're going to say. If you speak up a little louder, I'll hear it. I'm sorry. I'm sorry, Your Honor. We know that the claimant is disabled, and the Commissioner in our remand motion in the district court had actually said that we would not disturb that subsequent finding of disability. So that's she, as Your Honor said, she's only going to be in possibly a better position than she was before this lawsuit was filed. I presume what the applicant is really concerned about or the claimant is really concerned about is the possibility of a decision that goes back and gets improved in terms of its persuasiveness or what it cites or how it avoids running afoul of some of the case law of this court. Isn't that a substantial risk the claimant should be concerned about? I mean, I assume he's not fighting to be here just because he wants to see us personally all that badly. He thinks his current hand is better than the hand he's going to have when he comes back the next time. Isn't that a problem? Well, I'm sure that's what the plaintiff is concerned about. But the problem that we have here is that we don't know what the evidence that was submitted with the second application has to say. And it can show that the claimant is disabled at an earlier date than the date that was found in the subsequent application, but we just don't know what that date could potentially be. And this case would best go back for an administrative law judge with perhaps the assistance of a medical expert to help determine onset date to figure out exactly when this claimant became disabled. She's alleging disability back to, I believe, March of 2003, but maybe the evidence from the subsequent application will affirmatively show that she's disabled maybe a year later. That's just something that's a lot of fact-finding that needs to be done, and it's just not appropriate for the federal courts to make that factual determination. It's possible that it could come back and she's found not disabled for this exact period of time, but it could also come back and find that she's disabled for the whole period or a portion of that, and that's just something that the agency should do. I understand from what you're saying here today and what you said you represented the district court that the purpose of the remand would be only to figure out onset date, accepting the administration that she is disabled. Is that correct? Well, that's what the district court had ordered, was that the agency on remand should reconsider all of the evidence, including the evidence from the first application, reconcile it with the second application, and determine whether there's an earlier onset date. So that's really the issue that needs to be determined. A simple yes would help me. If yes is the answer, saying something else, I don't quite know whether that's a yes or a no. So do you recall my question? If you could please repeat it, Your Honor. Okay. So according to what you said today and what I understand you said in this report, the remand is only for the purpose of determining an onset date, but not for the purpose of disturbing or reconsidering the favorable decision that she is disabled. Correct, yes. Now, there is that line in your brief that suggests otherwise, and that Mr. Caldwell pointed to and which I noticed as well. So I just want to reconcile that with what you're representing now. Of course. I believe in the brief it was a quote from our HALEX provisions, our internal policy provisions that deal with how a hearing office operates. And the agency could, under normal circumstances, it could reassess a subsequent application on remand. However, in this specific case, when we filed our motion to remand in the district court, we actually agreed not to disturb the subsequent application. I understand there was possibly some confusion by including that HALEX language in our brief. Well, that's why I'm asking that question. Correct. So you're presenting to this Court that whatever the language of the brief was, the general language, it is the commitment of the Commissioner that if there is a remand, if we affirm the remand, the remand will be only for purposes of setting the onset date. The onset date, yes. Okay. And if Mr. Caldwell has any doubts about that, he can get the transcript of, or rather the, I want to say the tape because I'm an old-fashioned kind of guy, but we don't have tapes anymore. He can get the audio file of this oral argument, and he has you on back of the semicircle. Correct. Okay. I don't have any doubt that the Commissioner will stand by what you said, but if there's any doubt. I understand. And I understand the confusion that was caused by that line in the brief, and we apologize for that. Okay. No problem. No problem. Is there anything further you have? If there are no further questions, we would ask that this Court affirm the district court's decision to remand for further proceedings. Thank you. Thank you. Mr. Caldwell? Have we taken the chill off? Say that again, please. Have we taken the chill off? No, you have not. We're talking about the wrong thing. I tried. I know you did, and I appreciate the effort. We're talking about the wrong thing. We're talking about whether she would be Mrs. Luna would be worse off if she went back before the agency would have to go through that bureaucratic gauntlet again. That's not the issue in this case. It's not been resolved to the extent that it was an issue. The issue in this case is respect for precedent. The issue in this case is Bretton v. Massonari. The issue in this case is Barney II, and the subsequent cases that talk about the situation, Bretton is a request by the claimant to go back. That by itself changes things because the claimant, and in this case the commissioner, is a position where the commissioner is affirmed. It can only get better for your client, not worse. I respectfully disagree, Your Honor, that the only difference between Mrs. Luna's case and Mr. Bretton's case is the name of the party who's making the request. In all other respects, it's exactly the same. The district court did something interesting. The district court went to a West Virginia case and said, well, that distinguishes Bretton, because in this West Virginia case, the day of the grant of benefits was the day after the subsequent denial of benefits. I went back and took a closer look at Bretton, and I gave the clerk a markup copy of Bretton for the panel's members' convenience, and Bretton's exactly the same. The grant of benefits in Bretton was the day after the denial. So the district's court rationale by the very terms of the Bretton decision is faulty. So that's what we should be focusing on here is the respect for precedent and the fact that if it's – if the claimant can't get away with it in Bretton, then the commissioner can't get away with it in Luna. And that should be how this Court resolves that matter. The other – the other things that this Court should go on to do, of course, is to deal with the treating psychiatrist's opinion and the commissioner's vocational expert's testimony. This Court should also address Ms. Luna's testimony, which, again, the commissioner's vocational expert said that person couldn't work. And in addition, we had the commissioner's own examining psychologist who said there were serious limitations. But I do think that respect for precedent – Kennedy, the Bretton case, the Court said, we said, in this case, Bretton's second replication involved a different medical evidence, a different time period, and a different age classification. That's correct, Your Honor. We don't know whether that's the case here. Sure we do. We know two things. We know that the – there is – we know that there is no allegation of new evidence that addresses the prior decision. And please remember, the plain language of the statute says there must be a showing, not a speculation. We certainly know there's a different time period. It's after she was denied benefits on the first application. The only thing that makes Bretton theoretically distinguishable is the age category. The age category hasn't changed in terms of whether she's 50 or above. And that's – that's irrelevant to whether Bretton should, in fact, be distinguished. My time is up. Thank you. Okay. Thank you, Case Society. We'll stand for a minute.
judges: Kozinski, Wallace, Clifton